1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Charles H. Rimlinger, Jr., et al.,

           Plaintiffs,

vs.

Shenyang 245 Factory, et al.,

           Defendants.

No: 2:13-cv-2051-JAD-NJK

**Order Granting in Part Plaintiffs'
Motion for Default Judgment and
Declaratory Judgment [Doc. 10]**

Currently before the Court is Plaintiffs Charles H. Rimlinger and RELS Acquisition Company, Inc.'s Motion for Default Judgment [Doc. 10], seeking entry of a default judgment against Defendants, Shenyang 245 Factory and Chen Yan for a declaration that Defendants infringed on U.S. Patent No. 5,749,273 and a permanent injunction enjoining Defendants from continued infringement of this patent.  Defendants were properly served on November 7, 2013, but neither has appeared; consequently, the motion is unopposed.  Finding this motion can be resolved without a hearing,[1] and for the reasons set forth below, the Court grants the motion in part, awards declaratory relief, denies injunctive relief, and awards no damages.

### Background

In this patent infringement action, Plaintiffs allege that on May 12, 1998, the United States issued Patent No. 5,749,273, "Method and apparatus for advancing a tool on a lathe" ("273 Patent").  Doc. 1 at 2.  They allege that Rimlinger, who owns the patent, granted an exclusive, worldwide license to RELS on February 1, 2005.  *Id.* at 3.  Defendant Shenyang continues to directly and indirectly infringe on the 273 Patent "by making, designing, using, offering to sell, and/or selling in the United States, and/or importing into the United States,

---

[1] *See* Nev. L.R. 78-2.

products or processes that embody one or more inventions claimed in the 273 Patent." *Id.*
Defendants also allegedly "contribute to and induce the infringement of the 273 Patent by
advertising the infringing use in their promotions materials available in the United States . . .
and on their website." *Id.*

Defendants advertised the infringing products for sale on November 5, 2013, at the
Automotive Aftermarket Products Expo in Las Vegas, Nevada ("AAPE Expo"). *Id.*  On that
date, Rimlinger approached Shenyang's exhibit booth and spoke to Yan, demanding that
Shenyang cease advertising and selling the infringing product, but Yan, on behalf of
Shenyang, rebuffed him.  *Id.*  Plaintiffs allege, on information and belief, that Defendants
intend to continue infringing on the 273 Patent.  *Id.* at 4.

Plaintiffs brought one count of patent infringement, claiming that (1) Defendants have
used, sold, or offered for sale products, machines, and/or tools infringing on each of the
elements of one or more of the 273 Patent's claims without license from Plaintiffs; (2) this
use violated 35 U.S.C. § 271(a) and/or (f); (3) the infringing use was and continues to be
deliberate; and (4) as a result of Defendants' conduct, Plaintiffs have suffered injuries
entitling them to relief under 35 U.S.C. § 284, for which they will suffer irreparable harm
under 35 U.S.C. § 283.  *Id.* at 4-5.  Plaintiffs request declarations that (1) the 273 Patent was
duly and legally issued, and is valid and enforceable; (2) Shenyang has "directly infringed,
contributorily infringed, and/or induced infringement of one of more claims of the 273
Patent"; (3) Yan has "wilfully infringed" on the 273 Patent; and (4) Defendants have wilfully
infringed on the 273 Patent.  *Id.* at 5.  Plaintiffs also seek a preliminary and permanent
injunction against Defendants "and their respective officers, agents, servants, employees, and
attorneys, and those persons in active concert or participation with them who receive actual
notice of the order by personal service or otherwise, from committing further acts of
infringement" under either 35 U.S.C. §§ 271 or 283.  *Id.*  Plaintiffs also seek attorney's fees
under 35 U.S.C. § 285, damages under 35 U.S.C. § 284, and plaintiff's costs.  *Id.*

Defendants were both served with a copy of the summons and complaint on
November 7, 2013, but neither has appeared.  On December 3, 2013, Plaintiffs sought a

1   clerk's entry of default against both defendants, which was entered on December 5, 2013.

2   Docs. 8, 9.  Plaintiffs now move this court for a default judgment.  Doc. 10.

3                                          **Discussion**

4            Plaintiffs properly complied with the requirements for entry of a default judgment by

5   first applying for and obtaining a clerk's entry of default pursuant to Fed R. Civ. Proc. 55(a),

6   and then moving for entry of a default judgment pursuant to Fed. R. Civ. Proc. 55(b)(2).[2]

7   Therefore, the Court may consider the merits of their motion.  In their motion, Plaintiffs seek

8   only their declaratory and injunctive relief, but do not re-urge their request for attorney's

9   fees, damages, or costs.  *See id.* at 1, 9-10.

10           Fed. R. Civ. Proc. 55 provides a mechanism for obtaining a default judgment against a

11  party who has failed to plead or otherwise respond to claims brought against it.  Where this

12  failure is "shown by affidavit or otherwise," the clerk must enter that party's default under

13  Fed. R. Civ. Proc. 55(a).  After entry, the movant must request a default judgment from the

14  court under Fed. R. Civ. Proc. 55(b)(2).[3]  A district court has discretion to enter a judgment

15  by default,[4] which typically turns on the consideration of seven factors: (1) potential

16  prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency

17  of the complaint; (4) the amount of money at stake in the action; (5) the potential disputes as

18  to material facts; (6) whether the default was due to excusable neglect; and (7) the strong

19  federal policy favoring adjudications on the merits.[5]  Rule 54(c) provides that a default

20  judgment entered against a party "must not differ in kind, form, or exceed in amount, what is

21

22

23          [2] Fed. R. Civ. Proc. 55(b)(1)-(2) provide that a party against whom a default judgment is sought must not

24  be a minor or an incompetent person.  Shenyang is not a natural person, and there is on indication that Yan is a
    minor or incompetent person.

25          [3] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Trustees of the Bricklayers & Allied Craftworkers

26  Local 13 Defined Contribution Pension Trust for Southern Nevada v. Tumbleweed Development, Inc.*, 2013 WL
    143378, at *2 (D. Nev. Jan. 11, 2013) (citing *Eitel*).

27          [4] *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).

28          [5] *See Eitel*, 782 F.2d at 1471-72.

                                                3

demanded in the pleadings."[6]

## A.    Possibility of Prejudice, Substantive Merits, and Sufficiency of Complaint

The Court finds that the first, second, and third *Eitel* factors all weigh in favor of a default judgment.  As to the first factor, Plaintiffs will likely suffer potential prejudice if default judgment is not entered, as Defendants have failed to respond to the Complaint and the harm from the alleged infringement is ongoing.

As to the second and third factors, Plaintiffs' claims appear both sufficient and to have merit.  Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."[7]  Similarly, 35 U.S.C. § 271(f) states,

> (f)(1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
>
> (2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.[8]

Plaintiffs brought one count of patent infringement, claiming that (1) Defendants have used, sold, or offered for sale products, machines, and/or tools infringing on each of the elements of one or more of the 273 Patent's claims without license from Plaintiffs; (2) this use violated 35 U.S.C. § 271(a) and/or (f); (3) the infringing use was and continues to be deliberate; and (4) as a result of Defendants' conduct, Plaintiffs have suffered injuries for

---

[6] Fed. R. Civ. Proc. 54(c).

[7] 35 U.S.C. § 271(a).

[8] 35 U.S.C. § 271(f).

4

which they will suffer irreparable harm under 35 U.S.C. § 283. *Id.* at 4-5.[9]  35 U.S.C. § 283 gives the courts jurisdiction to grant injunctions for violations of the patent law.[10]  To support their claim that the 273 Patent had been infringed, Plaintiffs also attached copies of the 279 Patent as issued, *id.* at 8-19, as well advertisements of Defendants' allegedly infringing product. *Id.* at 21-22.

The Court has reviewed these two attachments, as well as the factual allegations in the Complaint that are deemed admitted by virtue of Defendants' default.[11]  It finds these materials act the factual allegations in the complaint suffice to establish Defendants' liability for violations of both 35 U.S.C. § 271(a) and (f), thereby satisfies the second and third *Eitel* factors.

**B.      Sum of Money at Stake**

The fourth *Eitel* factor takes into account the amount of money at stake and the seriousness of the defendant's conduct, which involves an assessment of whether the recovery sought is proportional to the harm which the defendant's conduct has caused.[12]  In

this case, there is no amount of money specifically alleged, and a default judgment is not sought for any monetary amount.  Thus, this factor is neutral.

**C.      Possible Dispute as to Material Facts**

The fifth *Eitel* factor relates to potential disputes about material facts.  Here, a number of material facts have already been deemed admitted as a matter of law by virtue of Defendants' failure to respond.  "An allegation—other than one relating to the amount of

---

[9] As represented in their motion, Plaintiffs do not seek money damages under 35 U.S.C. § 284.

[10] 35 U.S.C. § 283.

[11] Fed. R. Civ. Proc. 8(b)(6); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("Upon default[,] the factual allegations of the complaint, except those relating to the amount of damages will be taken as true.").

[12] *See Trustees of the Bricklayers*, 2013 WL 143378, at *3 (citations omitted).

damages—is admitted if a responsive pleading is required and the allegation is not denied."[13] Defendants have failed to file any responsive pleading or deny Plaintiffs' allegations. Thus, the Court may accept as true those non-damages-related factual allegations in Plaintiffs' complaint.  Accordingly, the Court finds that no genuine dispute of material fact precludes granting Plaintiffs' motion.  The fifth factor weighs in favor of a default judgment.

**D.     Excusable Neglect**

The sixth *Eitel* factor considers whether the default has resulted from excusable neglect.  There is no evidence here to suggest excusable neglect.  The record reflects that summonses were issued to Defendants on November 7, 2013, Docs. 5, 6, and hand-delivered to Yan (both individually and on behalf of Shenyang) while Yang attended the AAPE Expo. *Id.*  Plaintiffs moved for clerk's entry of default on December 3, 2013, after Defendants' opportunity to answer or otherwise respond expired under Fed. R. Civ. Proc. 12.  Doc. 8. Therefore, Defendants were provided with an adequate opportunity to respond to Plaintiffs' allegations.  The sixth *Eitel* factor weighs in favor of a default judgment.

**E.     Decision on the Merits**

The final *Eitel* factor takes into consideration the strong policy preference for disposing of cases on their merits.[14]  Defendants' failure to answer Plaintiffs' complaint or otherwise engage in the litigation process casts doubt over the feasibility of any eventual decision on the merits.  The Court, therefore, finds that the ordinary policy preference in favor of decisions on the merits will not, without more, preclude entry of a default judgment.

In their totality, the *Eitel* factors weigh in favor of a default judgment.

**F.     Relief Requested**

Plaintiffs argue in their motion that they do not seek default as to the attorney's fees originally alleged under 35 U.S.C. § 285, damages alleged under 35 U.S.C. § 284, or plaintiff's costs, *see* Docs. 1 at 5; 10 at 1, 9-10.  Rule 54(c) provides that a default judgment

---

[13] Fed. R. Civ. Proc. 8(b)(6).

[14] *See Eitel*, 782 F.2d at 1472.

1    entered against a party "must not differ in kind, form, or exceed in amount, what is
2    demanded in the pleadings."[15]   Under Rule 55(b)(2), the Court "may" conduct hearings to
3    determine the precise amount of monetary damages,[16] but "[i]t is well settled that a default
4    judgment for money may not be entered without a hearing unless the amount claimed is a
5    liquidated sum or capable of mathematical calculation."[17]   Although the claim for damages
6    has been abandoned, the plain language of Rule 54(c) obligates the Court to address the
7    damage request articulated in Plaintiffs' complaint.

8        35 U.S.C. § 285 provides that, "the court in exceptions cases may award reasonable
9    attorney's fees to the prevailing party."[18]   The district court has broad discretion to determine
10   the propriety of enforcing this fee-shifting provision based on the totality of the
11   circumstances presented in an individual case.[19]   As Plaintiffs have provided no indication
12   that this case is "exceptional," the Court exercising its discretion denies Plaintiffs' request for
13   attorney's fees.

14       Plaintiffs also allege their entitlement to damages under 35 U.S.C. § 284, which
15   provides: "Upon finding for the claimant the court shall award the claimant damages
16   adequate to compensate for the infringement, but in no event less than a reasonable royalty
17   for the use made of the invention by the infringer, together with interest and costs as fixed by
18   the court."   Having already concluded that Plaintiffs' allegations make out a case of patent
19   infringement, the Court is obligated to award damages.   However, as Plaintiffs submit no
20   evidence of their damages and have effectively abandoned this avenue of relief, the Court
21   awards $0 in damages under 35 U.S.C. § 284.

22

23

24       [15] Fed. R. Civ. Proc. 54(c).

25       [16] Fed. R. Civ. Proc. 55(b)(2).

26       [17] *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

27       [18] 35 U.S.C. § 285.

28       [19] *Highmark Inc. v. Allcare Health Management System, Inc.*, 134 S.Ct. 1744, 1748 (2014).

Finally, Plaintiffs request "costs," but fail to articulate a specific statutory basis for the same. Doc. 1 at 5. They have declined to re-urge their request or provide any documentation of what costs they are entitled to recover, and the Court declines to speculate. No costs are awarded.

In sum, Plaintiffs do not specify any damage amounts in either their complaint or the motion for default judgment. As no "amount" of damages is clear from the papers submitted, there is no need for an evidentiary hearing, and the Court "awards" Plaintiffs damages, attorney's fees, and costs of $0.

**G.     Declaratory Relief**

Plaintiffs seek declarations that (1) the 273 Patent was duly and legally issued, and is valid and enforceable; (2) Shenyang has "directly infringed, contributorily infringed, and/or induced infringement of one of more claims of the 273 Patent"; (3) Yan has "wilfully infringed" on the 273 Patent; (4) Defendants have wilfully infringed on the 273 Patent. *Id.* at 5. The Court finds that the legal bases of all four of these declarations have been established in the well-pled allegations accepted as true for purposes of default and enters a declaratory judgment on each point.

**H.     Permanent Injunction**

Plaintiffs also seek a permanent injunction against Defendants under 35 U.S.C. § 283 and Fed. R. Civ. Proc. 65(d) to enjoin "Defendants and any officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, and those persons in active concert or participation with them, from making, using, selling, offering for sale, or importing into the United States for the remaining terms of the Patent, any machines or devices that embody that Patent, including and without limitation the 'C9370C Brake Lathe.'" Doc. 10 at 9.

Under Rule 65(d), "Every order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not

by referring to the complaint or other document—the act or acts restrained or required."[20]

35 U.S.C. § 283 states, "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."[21]  Typically, to determine whether a permanent injunction should issue after succeeding on the merits of the claims at issue, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[22]  In any case, injunctive relief is "a drastic and extraordinary remedy,"[23] which does not issue as a matter of course if a plaintiff makes out a case of patent infringement,[24] but is subject to the court's equitable discretion.[25]

### 1.    Irreparable Injury

Plaintiffs argue that they will suffer irreparable injury "if a company is simply able to make an exact copy of an invention developed and patented by Rimlinger and sell that copy to others."  Doc. 10 at 8.  Courts may not presume irreparable injury even where success on the merits of a patent claim have been demonstrated.[26]

---

[20] Fed. R. Civ. Proc. 65(d).

[21] 35 U.S.C. § 283.

[22] *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995-97 (9th Cir. 2011).  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008) (quotation omitted) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success").

[23] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

[24] *See Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249 (9 th Cir. 2013) (citing, *e.g.*, *Ebay*).

[25] *EBay*, 547 U.S. at 391.

[26] *See Herb Reed Enterprises*, 736 F.3d at 1248-49; *Flexible Lifeline Systems*, 654 F.3d at 995-97; *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1044 (9th Cir. 2012).

1  "An injunction will not issue if the person or entity seeking injunctive relief shows a

2  mere possibility of some remote future injury, or a conjectural or hypothetical injury."[27]

3  Showing only "mere monetary harm" or even "financial hardship" will typically not do,[28]

4  because "[s]uch injury can be remedied by a damage award."[29]  However, "[e]vidence of loss

5  of control over business reputation and damage to goodwill [can] constitute irreparable

6  harm."[30]  Similarly, loss of market share or "first mover" advantage may lead to

7  relief—especially where the movant demonstrates that it operates in a market with only one

8  or several competitors.[31]

9      Plaintiffs' one-line argument fails to articulate why or how the sale of "knockoff"

10  products will harm them by gesturing to the size of the market in which they operate, the

11  impact of any such sales on Defendants' business goodwill, or any other factor beyond pure

12  monetary loss.  Without any description of the context in which the infringing activity

13  occurs, it is not self-evident to the Court why "irreparable harm" will occur from Defendants'

14  use of the product.  Defendants' failure to answer the Complaint or otherwise participate in

15  this case may have tied Plaintiffs' hands with respect to actually proving some of the relevant

16  factors, such as relative market share or loss of business goodwill.  Nonetheless, and as

17  instructed by *Ebay* and its progeny, the Court is not free to presume irreparable harm from

18  success on the merits.  Without more, the Court cannot conclude that irreparable harm will

19  result from Defendants' continued infringement.

20    **2.    Adequacy of Legal Remedies**

21      Plaintiffs argue that their legal remedies are likely inadequate because they have

22

23    [27] *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

24    [28] *Elias v. Connett*, 908 F.2d 521, 526 (9th Cir. 1990).

25    [29] *Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

26    [30] *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th
27  Cir. 2013) (citation omitted).

28    [31] *See Open Text, S.A. v. Box, Inc.*, --- F. Supp. 2d ----, 2014 WL 1389065, at *13-16 (N.D. Cal. Apr. 9,
2014).

10

virtually no possibility of recovering anything against Defendants, a Chinese citizen and a Chinese company; indeed, they have been unable to calculate the amount of damages because Defendants failed to answer the complaint.  Doc. 10 at 8.  "A plaintiff is not entitled to an injunction if money damages would fairly compensate him for any wrong he may have suffered."[32]  In this case, the Court agrees that Defendants' failure to answer the complaint, as well as their residence on a different continent, makes securing a monetary recovery speculative at best.  This factor weighs in favor of granting an injunction.

### 3. Balance of Hardships

Plaintiffs argue that the balance of hardships weighs in their favor because the complaint alleges that Defendants have infringed on their exclusive patent rights.  Doc. 10 at 8-9.  "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[33]  Based on the allegations deemed true, the Court finds this factor weighs in favor of granting the permanent injunction.

### 4. Public Interest

Plaintiffs contend that the public interest is served by enforcing the patent laws against a potential infringer.  Doc. 10 at 10.  Where a public interest may be affected by an injunction, the Court must also consider this factor.[34]  "The public interest inquiry primarily addresses impact on non-parties rather than parties."[35]  The Court agrees that the public interest is better served by enforcing the patent laws against defendants that, as here, are deemed to have infringed United States patent law.  This factor weighs in favor of enforcement.

---

[32] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 595 (1952).

[33] *Amoco Production Co. v. Village of Metrosound U.S.A., Inc.*, 480 U.S. 531, 542 (1987) (considering request for preliminary injunction).

[34] *Carribbean Marine Services Co. v. Balridge*, 844 F.2d 668, 674 (9th Cir. 1988).

[35] *Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002).

**5.      Conclusion**

In sum, of the factors considered, only the irreparable injury prong remains unsatisfied.  Plaintiffs' failure to shift this factor in their favor may stem in part from Defendants' own failure to answer the complaint or otherwise participate in this case, but this does not overcome the problem, which Plaintiffs acknowledge, that the "extraordinary" remedy of injunctive relief cannot issue unless irreparable harm is shown.  *See* Doc. 10 at 8. The lack of sufficient showing of irreparable harm precludes the Court from affording Plaintiffs the extraordinary remedy of injunctive relief they seek.

<b>Conclusion</b>

Accordingly, based upon the foregoing reasons, good cause appearing, and no reason for delay,

It is **HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment [Doc. 10] is **GRANTED** in part and **DENIED** in part: it is **GRANTED** as to Plaintiffs' request for declaratory relief, as submitted in their Complaint.  The Court hereby declares that (1) the 273 Patent was duly and legally issued and is valid and enforceable; (2) Shenyang has directly infringed, contributorily infringed, and/or induced infringement of one of more claims of the 273 Patent; (3) Yan has wilfully infringed on the 273 Patent; (4) Defendants Yan and Shenyang have wilfully infringed on the 273 Patent.

It is **DENIED** as to Plaintiffs' request for injunctive relief.

It is **FURTHER ORDERED** that Plaintiffs are awarded damages, attorney's fees, and costs in the amount of $0.

The Clerk of Court shall enter judgment accordingly.

DATED: June 4, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE